UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROGER JEFFERSON,

               Plaintiff,                                  **MEMORANDUM & ORDER**

      v.                                               06-CV-6616 (NGG) (LB)

RAYMOND W. KELLY, *et al.*,

               Defendants.
----------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court is a motion to dismiss *pro se* plaintiff Roger Jefferson's ("Plaintiff" or "Jefferson") 42 U.S.C. § 1983 Complaint by Defendants Raymond W. Kelly, Detective Mary Javits,[1] Detective Greco, and Detective John Doe, pursuant to Fed. R. Civ. P. 12(c). Defendants initially served their motion papers on Plaintiff on July 16, 2007. (See Defendants' November 9, 2007 letter to the court (Docket Entry # 21).) On August 17, 2007, Plaintiff submitted a two-page "Affidavit/Affirmation in Opposition to Defendant's [sic] Motion." (See Docket Entry # 16.) After Defendants informed Magistrate Judge Lois Bloom that they had yet to receive a "proper" response from Plaintiff, on October 11, 2007, Judge Bloom ordered that if Plaintiff failed to submit an additional response to Defendants' motion by October 26, 2007, his affidavit/affirmation would be construed as his response to the motion. (See Docket Entry # 20.) Judge Bloom also ordered that the fully briefed motion be filed by November 9, 2007 and that no further extensions would be granted. (Id.) On November 9, 2007, having received no further

---

[1] The docket sheet lists this Defendant as "Javits," but Defendants refer to her as "Javis" in their motion papers. The court will use the name on the docket sheet.

1

response from Plaintiff, Defendants filed their motion papers with the court in accordance with Judge Bloom's Order and requested that the court treat the motion as fully briefed. Plaintiff has not filed any additional response since that time.

Accordingly, the court considers Defendants' motion fully briefed and will decide it based on the papers submitted to date. For the reasons set forth below, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

**I.      Background**

Jefferson alleges the following in his December 11, 2006 Complaint, which, for purposes of this Fed. R. Civ. P. 12(c) motion, the court accepts as true. See Desiano v. Warner-Lambert & Co., 467 F.3d 85, 89 (2d Cir. 2006). On July 17, 2003, when Jefferson was on his way to visit his son, two individuals exited a vehicle with guns and "started shooting." (Complaint (Docket Entry # 1) at 4.) After he ran to his son's apartment, Jefferson realized he had been shot in the leg and called an ambulance, which arrived approximately fifteen to twenty minutes later. (Id.) Two Emergency Medical Technicians carried Jefferson to the ambulance on a stretcher, escorted by Javits. (Id.) As Jefferson was being transported to the hospital, Javits ordered the ambulance to stop and "forced" Jefferson to stand up to see if he could identify as those who had fired the shots three individuals in police custody who were standing approximately 50 feet from the ambulance. (Id. at 5.) Jefferson informed Javits that he could not identify who had fired the shots and asked that he be transported to the hospital.

Javits then began questioning Jefferson about whether he had a weapon, at which point he told Javits that he did not want to talk with her anymore and that she could speak to his attorney. (Id.) However, Javits persisted in asking questions about a gun en route to the hospital and

2

during the time Jefferson was being treated in the emergency room. (Id.) After being treated, Jefferson was moved to a hospital room and handcuffed to the bed. (Id.)

The next morning Jefferson was taken to the 120th Precinct, where he was questioned by Detective Greco and his partner. (Id.) Jefferson informed the officers that he "d[id] not want to speak with them without an attorney present." (Id. at 5-6.) In response, an unidentified detective said "Look we found a gun at Jennifer Miles's home and unless you claim it, [w]hich we will require a written statement of, we[']re going to lock her up and take away the kids." (Id. at 6.) As a result, Jefferson "wrote and signed whatever they directed, or put before me" (id.), which included a Miranda waiver and a written statement about the incident, (Ex. D to Douglas Heim Decl. ("Heim Decl.") (Docket Entry # 24)). In the signed statement, Jefferson stated that he had pulled out a gun and started shooting in self defense at the men who were shooting at him. (Id.)

After signing the statement, Jefferson was "officially arrested" and charged with Criminal Possession of a Weapon in the Second Degree, Criminal Use of a Firearm in the Second Degree, and Reckless Endangerment in the First Degree. (Ex. C to Heim Decl., NYPD Arrest Report.)[2] On July 18, 2003, Jefferson was charged in a criminal complaint with Attempted Murder in the Second Degree, Criminal Possession of a Dangerous Weapon in the Second Degree, and Criminal Possession of a Weapon in the Second Degree. (Ex. E. To Heim Decl.) The criminal complaint indicates that information about the incident was also provided by Jermaine Dickerson and Joseph Sith-Davis, who claimed that Jefferson fired numerous rounds at them. (Id.)

Jefferson was indicted by a grand jury on July 31, 2003 and again on October 31, 2003.

---

[2] In his Complaint, Jefferson alleges that he was arrested on July 18, 2003 after the detectives interrogated him, but the arrest report indicates that the arrest occurred on July 17, 2003. The discrepancy is immaterial to the resolution of this motion.

(Exs. F & G to Heim Decl.) Jefferson's first trial resulted in a mistrial and his second trial resulted in an acquittal on December 7, 2004. (Complaint at 6; Ex. H to Heim Decl.) Jefferson spent seventeen months in jail during the prosecution of his case. (Complaint at 6.)

The court agrees with Defendants that Plaintiff's allegations, liberally construed, attempt to assert false arrest, false imprisonment, excessive force, due process (coerced confession), and malicious prosecution claims, notwithstanding his failure to articulate those claims as such.

## II. Discussion

In reviewing the Complaint, the court is mindful that Jefferson is proceeding *pro se* and that his pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." Hughes v. Rowe, 449 U.S. 5, 9 (1980). It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). If a liberal reading of the pleading "gives any indication that a valid claim might be stated," the court must grant leave to amend it. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

As noted above, the court must accept Plaintiff's allegations in the Complaint as true and must draw all reasonable inferences in his favor when deciding a motion to dismiss under Fed. R. Civ. P. 12(c). Desiano, 467 F.3d at 89. In addition "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002) (citation omitted). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." Id. at 153 (citation and internal quotation marks omitted).

4

When faced with considering documents outside the Complaint on a motion to dismiss, the need for a district court to convert the motion into one for summary judgment under Fed. R. Civ. P. 56 "largely dissipate[s]" where the non-movant had notice of "all the information in the movant's papers and has relied upon these documents in framing the complaint." Id. Because Plaintiff's Complaint relies heavily on the information contained in the documents attached to Defendants' motion and because Plaintiff had notice of all of those documents, I find that there is no need to convert the instant motion to a motion for summary judgment.

### A. Defendant Kelly

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983 ." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citation omitted). Furthermore, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002) (citation omitted). Rather, supervisory liability attaches only where a supervisor has shown "deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, provided that the plaintiff can show an affirmative causal link between the supervisor's inaction and her injury." Id.

Here, Jefferson does not offer any allegations whatsoever against Commissioner Raymond Kelly, either with respect to personal involvement in the alleged violations or supervisory culpability. Accordingly, all claims against Defendant Kelly are dismissed.

## B. Statute of Limitations

In section 1983 actions, the applicable limitations period is found in the "'general or residual [state] statute [of limitations] for personal injury actions,'" which in New York state is three years. Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002) (quoting Owens v. Okure, 488 U.S. 235, 249-50(1989)). In general, a section 1983 action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." Id. (citation and internal quotation marks omitted). Specifically, a false imprisonment ends and the claim begins accruing "once the victim becomes held pursuant to [legal] process — when, for example, he is bound over by a magistrate or arraigned on charges." Wallace v. Kato, 127 S. Ct. 1091, 1096 (2007). Similarly, "a cause of action for false arrest accrues at the time of detention," Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006), and a claim for excessive force accrues when the use of force occurred, Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir. 1980). Finally, the court agrees with Defendants that a due process claim based on a coerced confession would logically accrue on the day the confession was allegedly coerced. See id.; see also Weaver v. Brenner, 40 F.3d 527, 536 (2d Cir. 1994) (noting that defendants' actions connected to an allegedly coerced confession were not "beyond the reach" of the Due Process Clause).

Based upon the allegations in Plaintiff's Complaint, the latest date of accrual for any of these claims (false imprisonment, false arrest, excessive force, and coerced confession) is July 18, 2003, the day on which Detective Greco and his partner questioned Plaintiff and obtained his written statement. Thus, Plaintiff's December 11, 2006 Complaint was not filed within the three-year limitations period applicable to section 1983 claims. The court is cognizant of the fact that a statute of limitations is not jurisdictional, but rather is subject to waiver, estoppel, and equitable

6

tolling. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). However, there is nothing in Plaintiff's Complaint or in his "Affidavit/Affirmation In Opposition to Defendant's Motion" that would suggest that any such relief is warranted in this case. Accordingly, the aforementioned claims are time-barred and must be dismissed.

Because the allegations with respect to Detective Javits relate only to these claims, all claims against Detective Javits are dismissed.

### C. Malicious Prosecution

To the extent that Plaintiff's allegations may be read as an attempt to state a malicious prosecution claim, the claim is not similarly time-barred. See Heck v. Humphrey, 512 U.S. 477, 489 (1994) ("[A] cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor.") "To sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). To state a malicious prosecution claim under New York law, a plaintiff must show: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Id.

The only element of a malicious prosecution claim that Jefferson has clearly alleged is that the proceeding was terminated in his favor. As for the other elements, Jefferson does not clearly allege that Greco or his partner[3] played an "active role in the prosecution, such as giving

---

[3] Jefferson also does not make clear whether Greco's partner is Defendant Detective John Doe. The court assumes that this is so for purposes of this motion.

advice and encouragement or importuning the authorities to act," as required to show that Greco or his partner commenced or continued the criminal proceeding against him. Rothstein v. Carriere, 373 F.3d 275, 294 (2d Cir. 2004).

With respect to whether there was probable cause for the proceeding, "[p]robable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citation and internal quotation marks omitted). A grand jury indictment gives rise to a rebuttable presumption that probable cause exists. McClellan v. Smith, 439 F.3d 137, 145 (2d Cir. 2006) The presumption may be rebutted by showing that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." Id. "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." Rothstein v. Carriere, 373 F.3d 275, 284 (2d Cir. 2004) (citation and internal quotation marks omitted).

In this case, Jefferson signed a Miranda waiver and a written statement saying that he fired a gun at certain individuals in self defense. Taken at face value, the waiver and Jefferson's statement establish probable cause for his arrest and for the charges contained in the criminal complaint. Moreover, Jefferson was indicted twice by a grand jury, which creates the rebuttable presumption that probable cause existed for his prosecution. However, Jefferson's allegations suggest that in his view his Miranda waiver and resulting statement were coerced. The allegations relevant to this inquiry are that Greco and his partner continued questioning Jefferson

8

after being informed that he did not want to answer their questions without a lawyer and that Jefferson signed his statement only because the detectives threatened to lock up Jennifer Miles and "take away the kids."

The court is not inclined to view Jefferson's allegations as sufficient to support a claim that his statement was coerced, as he does not allege any specific actions on the part of the detectives that appear designed to overcome his will and produce an involuntary incriminating statement. See Rogers v. Richmond, 365 U.S. 534, 544 (1961) (stating that the issue in determining whether a statement was coerced is whether the conduct of law enforcement officials "was such as to overbear [the accused's] will to resist and bring about confessions not freely self-determined."); Weaver v. Brenner, 40 F.3d 527, 536 (2d Cir. 1994) (criminal suspects have a clearly established due process right to be free from official conduct designed to overcome the accused's will and produce an involuntary incriminating statement). More importantly, even assuming that the statement was coerced, Jefferson does not offer any allegations relevant to establishing misconduct with respect to the grand jury, for instance, that this statement was presented to the grand jury as a basis for obtaining the indictments. See Rothstein, 373 F.3d at 284 (concluding that Plaintiff could not overcome the presumption of probable cause where the contents of grand jury testimony was unknown and he had no idea what had happened before the grand jury); cf. Boyd v. City of New York, 336 F.3d 72, 77 (2d Cir. 2003) (reversing a grant of summary judgment on a malicious prosecution claim where conflicting stories between Plaintiff and police officers suggested the possibility that the police had lied in order to secure an indictment, and therefore a jury could reasonably find that the indictment was secured through bad faith or perjury).

Finally, Jefferson also has failed to specifically allege malice, although malice may normally be inferred from the absence of probable cause. <u>Lowth v. Town of Cheektowaga</u>, 82 F.3d 563, 573 (2d Cir. 1996).

In short, Jefferson's pleadings in their current form do not state a claim against Greco or his partner for malicious prosecution. Notwithstanding this conclusion, and because the court is troubled by the allegations that Greco and his partner may not have paid heed to Jefferson's invocation of his right to counsel, the court declines to dismiss the claim at this time. Given Jefferson's *pro se* status, in an abundance of caution the court grants him leave to amend his Complaint to state a malicious prosecution claim. <u>See</u> <u>Cuoco</u>, 222 F.3d at 112. Plaintiff shall file the Amended Complaint within thirty days of the date of this Order. Failure to do so will result in dismissal with prejudice.[4]

---

[4] The court declines to reach Defendants' qualified immunity argument at this time in the absence of a more developed record. Should Plaintiff submit an Amended Complaint that states a malicious prosecution claim, Defendant Greco may again assert a qualified immunity defense should he so desire.

**III.     Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to all claims against Defendants Kelly and Javits.  Defendants' motion is DENIED with respect to the malicious prosecution claim against Defendant Greco and his partner in order to allow Plaintiff thirty days to amend his complaint.  The Clerk of Court is directed to send Plaintiff a copy of this Order via U.S. mail.


SO ORDERED.

                                                                 s/ Nicholas G. Garaufis
Dated: April 21, 2008                        NICHOLAS G. GARAUFIS
      Brooklyn, N.Y.                    United States District Judge